Thank you, Your Honors. May it please the Court, my name is Sandra Slayton and I am representing Mr. Lund, the appellant on this appeal. This case involves an individual, Mr. Lund, claiming that his civil rights were violated under Section 1983 and also that he was discriminated against by the Superior Court under the ADA and Section 504. There's nothing special about it being a probate or trust matter. It could have occurred anywhere. But it's happenstance in this case that the violation occurred during a trust case. Counsel, the guardian ad litem is out. The order appointing the guardian ad litem has been dissolved. Judge Cowan is no longer on the case. Assuming the next judge can decide the case as I think is a valid presumption on the merits of the case without regard to whatever Judge Cowan did or didn't do, what's the harm, what's the continuing harm here? Well, Your Honor, I think that's an excellent question. The issue is respectfully not moot because Judge Cowan, the day he recused himself from this case, he entered an order to show cause against me. He said that part of his problem was that I had filed this civil rights case against him at all. He said that he was particularly disturbed that I filed a Ninth Circuit appeal one day after the District Court dismissed the case. And he also instructed in his November 12th order, which we believe, by the way, would be retaliatory in nature, and if this would have been not dismissed at the trial court, we would have, of course, sought to amend the case. That's a continuing harm in and of itself. He also put in his November 12th order that depending on what the evidentiary finder of fact, i.e. the next judge found, that the guardian ad litem should be reappointed. And so Mr. Lund is still, and that's the, you know, it may not be quote the law of the case under strict analysis, but that's the order, that's the next order that will be heard when we go back. Judge Cowan stayed the entire probate case until these matters were taken care of. So Mr. Lund, maybe the GAL was discharged, Your Honor. However, the order subjecting Mr. Lund to a GAL still stands. It's just that Judge Cowan chose to discharge this GAL, but he said right in his order, you know, it may be necessary to reappoint depending on what this next judge finds. Please, I want you to reappoint a GAL. No, no, no, no. I don't think you can substantiate that. The point is, he discharged the GAL. There is no guardian ad litem in place now. Presumably, the next judge will either appoint a guardian ad litem or not, regardless of what went on before. So I repeat, what's the continuing harm? Well, under the case law, Your Honor, under the case law, you don't have to actually be faced with an actual physical harm. In the cases that we cited, and even under Justice Scalia's language, under Article 3, it's a live controversy if this Court can grant relief. The test for mootness of an appeal is whether an appellate court can give the appellant any effective relief in the event that it decides the merits, the case on the merits in his favor. And here, this Court can grant relief if it vacates the dismissal of Mr. Lund's complaint so that the district court can determine the appointment of the GAL was a violation of its Fourth Amendment rights. Moreover, the relief is prospective because there exists this threat of more harm. But the new judge isn't obligated to appoint a GAL, right? I mean, you know, the new judge, he or she could, but he or she could decide not to. It seems pretty speculative at this point. However, the judge absolutely directed that that's something that the next judge should consider. I tell Judge Nelson a lot of things that he should consider, and a lot of times he'll ignore it. So I'm not sure that's not binding on the judge. Well, I think under the case law, Your Honor, in Steffel v. Thompson, in Medellin v. Genentech, in Cibran v. New York, the Steffel case, I think it's the threat of having this happen that is the key. The other issue, Your Honor, is the ADA part of the case. Can you just give me an update on, has anything happened with respect to this qualification motion? Anything else since the briefing? No. As I said before, the entire case has stayed until this next judge, as per Judge Cowan's order, decides whether I should be disqualified. And depending on what that next judge finds, as per Judge Cowan's order, that judge can still appoint. Mr. Lund is still threatened with the appointment of a GAL. That's why we're saying this is still a live controversy. Your Honor, respectfully, this particular GAL was discharged, but the order was not vacated. So the order still exists. Mr. Lund still has that cloud over his head that a GAL can be appointed. Well, hold on a second, but that doesn't mean the order wasn't vacated. Clearly the order was vacated. No, that's not how I interpret it. Well, there's no GAL. He appointed a GAL, then he vacated the order. I mean, you have an argument that... However, we may need her again. So that order is still out there. The finding that he is subject to a GAL, that order is still out there. Nobody's vacated the order. It's not like Judge Cowan wrote an order saying, now that I've gotten the GAL's report, I'm satisfied that Mr. Lund doesn't need a GAL anymore. No. He just simply said, for now, the GAL is discharged. However, depending on what this next judge finds, it happens to be a judicial officer named Judge Juarez, depending on what this next judge finds, you may want to reappoint the GAL. Just as simple as that. But isn't that true of any decision? That is, he made his decision, he then decided he was going to discharge the GAL, and any later judge can do whatever that judge decides to do in appointing a GAL or not. Why isn't that the same of any order of any court at any time? Except those findings are still with Mr. Lund. Those findings were made without an evidentiary hearing. Okay, so then if the new judge does the same thing, and doesn't give you an evidentiary hearing, and doesn't give you notice, then perhaps you have an issue. But for now, the order is gone. You're bothered by the fact that, I mean, counsel all the time, this happens where you get a bad decision from a district court judge, you go in for reconsideration, whatever the case may be, he vacates the prior order, but the prior order is still out there. I mean, it's out there in the sense that it's persuasive authority, perhaps, for some subsequent district court judge, but it always has to be couched in terms of, yeah, but it was a vacated order. So, I mean, I don't know how this is any different than any other order that a district court reconsiders and vacates. Well, except, Your Honor, I would ask you to look at Judge Cowan's order. He didn't vacate that order. He simply discharged this particular GAL. But moving on, and then I want to reserve the rest of my time for rebuttal, but moving on, certainly the ADA claims are not moved. The ADA claims are a live controversy. Right, but that was an issue that was – the judge made a comment from the bench. Why isn't that just controlled by judicial immunity? I mean, could you give me the example of a comment that a judge could make from the bench that could be an ADA claim? I think your position is what he said here, I guess. I cited cases where – these cases are really hard to find, Your Honor, but we did find cases where decision-makers in cases said things that were discriminatory, and we cited those in our brief. And they said those from the bench? Yes, in their decisions. Yes. Yes. And they were denied judicial immunity for that? Yes. Let's see. Jordan v. City of Union, 94F Sup, 1328, decision-maker who made statements regarding police officers' anxiety in termination, was liable for violation of ADA. Donaldson v. Trey Fuels. And these are Article III judges. These are decision-makers. No, no, no, no. Totally different. When you said decision-maker, what we're talking about is the immunity of a jurist, not a decision-maker. The case you cite, I don't have it in front of me. Ms. Slayton, did it involve a judge sitting on a bench? It may not have involved a judge, but it involved a judicial officer. And I just, you know, I have to bring out that this judge shouldn't have judicial immunity. He was, I mean, he accused my client, Mr. Lund, of having Down syndrome. When Mr. Lund, there was clear proof in front of him that Mr. Lund had been a judge competent. There's a final judgment that Mr. Lund was tested, a genetic test. He is competent. It's a final judgment of the state of Arizona. And there is no way that this judge had any right to use that terminology and to make those accusations. Counsel, all of that, I think, I mean, I don't have any question. It was a completely inappropriate comment. It seems like it was false. It seems like it's scientifically wrong. It shows a small-minded individual. That's a given. But it's a judge who said it in the context of the case. And I don't know why he doesn't get judicial immunity for that. I don't think he gets judicial immunity under the ADA because it is a case against the Los Angeles County Superior Court. They falsely perceived him to have a condition that he didn't have. He is a perfectly competent man. It respondeat applies. It's a live controversy, Your Honor. We're allowed to seek damages. And, I mean, that's my reading of the law. But you can't cite us to a single case where there's a judge sitting on the bench who makes a comment and is denied judicial immunity. I can't cite a single case where a judge has ever said something like this. That's not my question. It's because he doesn't. You may say that he does, but there's no case that says that he gets judicial immunity for a kind of comment so outrageous as this. But I would like to please save some time. I promised I wouldn't go through my time, like always I did. No, you're fine. We'll give you time. We've asked questions. Mr. Green. Yes, thank you, Your Honor. Good morning, Your Honors. May it please the Court. Matthew Green on behalf of the appellees, Judge Cowan and the Superior Court of California, County of Los Angeles. I'll keep my comments short. I would echo Your Honor's comments on mootness here with regard to the Section 1983 claims. You know, the GAL was appointed back in September of 2019 to assist Judge Cowan in resolving some petitions that were pending before him at the time. These were petitions to approve a settlement agreement and a petition to approve replacement of trustees. Judge Cowan ruled on those petitions in November of 2020, therefore eliminating any need to have the GAL, and the GAL was accordingly discharged. All right, good. Sir, let me take a slightly different position than the one you ascribed to us due to our question earlier. And can't we give some credence to the idea that because Judge Cowan directed the next judge to consider whether or not to appoint a guardian ad litem, is really putting his thumb on the scale of the next judge's decision maker, and therefore can constitute a continuing harm for purposes of mootness? I am always remembered in making an argument, and I suggested to the judge, I was a lawyer, that his question meant he was taking a certain position. That's not true. So, go ahead, sir. Yes, thank you, Your Honor. I don't read anything in Judge Cowan's November 2020 order as instructing the next judge to do anything. No, but I think you have to concede, or perhaps not, that he told the judge that the judge should consider the issue, not that the judge should do one thing or the other. So the question is, isn't that enough to constitute continuing harm for purposes of mootness? No, Your Honor, I don't believe so. If you go back and look at the order, the actual language says, quote, if Ms. Slayton is disqualified pursuant to this OSC, the next assigned judge may wish to consider reappointing the GAL to investigate, and then he identifies some very limited issues. Why did he say that? I mean, if he's going to vacate the order, why would he basically invite the new judge even to consider it? Judge Nilsen, I'm sorry. It's too low for me to hear. Okay. Well, my question – can you hear me now? My question is, why did he say that? I mean, I understand he didn't order anything, but it does smack of a judge who reluctantly is recusing himself, trying to check a box, but still influence the subsequent case. Well, first, Your Honor, if you read his order, you know, Judge Cowen was reassigned from probate court into general civil, you know, I believe a year before any of these rulings came out. And the only reason he stayed on the case was because of the complex history. There's been litigation involving Mr. Lundstrass going on for a decade. He was very intimately familiar. It wasn't an issue of him being reluctant to recuse himself. It was the issue that he felt, I think, in the interest of judicial economy, it made sense for him to handle these petitions, which were very complicated. The record before this court shows extensive briefing on all these issues. There's so much here in this case, and you can just see from Judge Cowen's orders – But if he's going to expunge it, why does he invite the new – and send it to a new judge? Why does he even invite – I mean, you know, it may not make it – it may still be moved, but there's an atmosphere of impropriety here. And I think part of the concern is that there's not a full recognition of how this looks. And, yeah, we can decide the legal issues, but at the end of the day, judicial officers should hold themselves to a higher standard. And so why is he even inviting this to be renewed? Your Honor, you know, all of his orders are very comprehensive. They're very detailed. I know that Judge Cowen – That's not my – Counsel, that's not my question. My question is why is he inviting this? If someone wants to re-request a guardian ad litem, that's fine. But on the one hand, he's saying, I'm dismissing the guardian ad litem. And on the other hand, he's sort of giving a wink, wink, nod, nod, hey, you might want to consider this in the future. Your Honor, as the way I read it, I'm not inside Judge Cowen's mind, but it's that he had serious concerns here. And he had believed the jail was necessary and appropriate in handling the prior petitions. I think he was – Well, then he shouldn't have vacated it. If he vacates it, then he says it's done. Now, it's fair enough. I mean, it's a given that this could be reconsidered. But given the circumstances, it seems to me that the better course of judgment here would have been I'm vacating it, I'm turning it over to a new judge and let them figure it out. I understand your concern, Judge Nelson. Again, I think he would just want to communicate his concerns. And I understand with stating those concerns, you know, potential impact that has on the new judge. However, I think as Judge Lee had pointed out, there's nothing binding in this. It's simply, you know, his comments do not bind another Superior Court judge in doing anything. And whether that Superior Court judge, the new judge assigned to the matter, ends up reappointing a G.A.L. or not, there's going to be an order to show cause issued. There's going to be a whole proceeding on it with notice and opportunity to be heard on that. And whether a new OSC is issued, whether a new G.A.L. is appointed or the prior one is reappointed is entirely speculative. We have no idea what's going to happen in the future. This case is about the appointment of the G.A.L. in September of 2019 that has been discharged. There can be no meaningful relief that this court can provide anymore with respect to that appointment. And there's no continuing impact on Mr. Lund in connection with that. I mean, just simply put, the case, the Section 1983 claims are entirely moot because of the discharge of the G.A.L. You may be right as a legal point, but I think echoing what Judge Nelson said, I think the concern we have is Judge Collins, for example, has a Down syndrome statement. When his counsel says that's not correct and asks him to retract it, he refuses. There is a sense here that he's almost doing whatever he wants. And it gives us concern. Ultimately, as a legal matter, it may be irrelevant. But there is this kind of shadow, kind of a cloud here surrounding this case. Yeah, and on the Down syndrome comment, Judge Lee, I mean, there's extensive evidence in the probate court record on this issue and various mental infirmaries with respect to Mr. Lund. Hold on. Let me back up. I don't know anything about the mental infirmary. But Down syndrome is a specific – I mean, it's diagnosable. What is the evidence? There have been numerous statements over the years in various court proceedings, including, I think, submissions from Mr. Lund's counsel alluding to the fact that he did, in fact, suffer from Down syndrome. And what Judge Collins simply said is that he may suffer from Down syndrome. But there's extensive evidence on various mental capacities. There's no genetic test out there that proves it one way or the other. Ms. Slayton has pointed to a test, I think, that was performed by her husband, that she contends had a negative – that showed he did not have Down syndrome. And whether he really did have Down syndrome or not isn't, I think, the point. It was just a comment that he may suffer from it based on evidence in the record and statements made that he did have Down syndrome, including from Mr. Lund's counsel. I guess all – it's fine to talk about the mental incapacities like that. I have no understanding of that. But to even throw out Down syndrome and even may have Down syndrome without a test for that, it's just – I'm just trying to understand the context for it. Like, I don't understand what would prompt a judge to say that. You're saying that there was testimony in the record. Somebody came in and had said, we think he has Down syndrome. There were numerous representations and filings in the court that Mr. Lund did suffer from Down syndrome. That was the basis for the comment. What kinds of representations were those? I mean, I'm baffled that anyone would say that without an actual test. Your Honor, they're in the various rulings. This issue of Down syndrome, whether he did or did not, in fact, suffer from Down syndrome, was obviously a big issue that Ms. Slayton has made throughout the probate proceedings. And in those rulings, they addressed all of the evidence or, you know, matters that were in front of Judge Cowan that supported that. He didn't make – Judge Cowan didn't make any finding on the condition that he did not suffer from Down syndrome. I don't – look, I don't think we're grilling you on the legal part of it. I think it's pretty clear, at least from my perspective, there's not a case – we haven't heard a case where a judge makes a comment from the bench that, you know, would not be subject to judicial immunity. It's just reinforcing this point that as judges we have a duty to show him – to show that we're taking all these cases fairly. And when these comments are being made and then he digs in on it, when the judge digs in on it and won't retract the statement, it just – it leads to the cloud. And it was unnecessary, it seems. Your Honor, I mean, there was evidence to the record that was the basis of his comment. But again, he didn't make any conclusion or finding. And it wasn't really essential. And perhaps it was superfluous, which I think is your point. But it's still – because there were mental capacity issues under California law, California probate code section 1003. Well, okay, that's fair. But is having Down syndrome dispositive of one of those factors? I mean, it seems to me even if he did have Down syndrome, even if there were a test, I don't think that that would be dispositive. You still check to the mental capacity. And there's plenty of individuals who have Down syndrome who I think would not be mentally incapacitated. So, I mean, the idea in which it was said, it just – there's just no good connotation out of it. Like, make the finding of mental capacity. And, by the way, he vacated the guardian ad litem. So that's why it just – everything runs across current. Yeah, just, Your Honor, to give a little bit of context, as I indicated, these probate proceedings involving Mr. Lund's trust have been going on for more than a decade. There were proceedings in front of another probate judge, Judge Beckloff, in 2013, that arose after the trustees had determined that Mr. Lund did not have the sufficient wherewithal capacity to receive the birthday distributions, which is really at the heart of all this. And that was affirmed by the California Court of Appeals. So there is a long history of mental issues here. And I understand your concern that the comment of Down syndrome and what the implications are of that and that that perhaps is superfluous. I understand that. But certainly, you know, as I think all of Your Honors have recognized, judges' comments from the bench made during the hearing are protected by judicial immunity. Okay. I think we've harangued you enough on that issue. So if there's others, you can move on. Your Honor, unless there's other questions, I will rest on my papers. Thank you. Thanks for this. Ms. Slayton, you may proceed. We'll give you two minutes for rebuttal. Thank you, Your Honor. This is so important. First of all, Mr. Lund, it wasn't on his burden of proof to show that he's competent, but he did show he was competent. He had a final judgment from the Supreme Court of Arizona certifying that he was competent, which is more than the rest of us have, after a seven-year fight. Secondly, my husband, this was an issue that Judge Cowan put in an order in the record, and it was just repeated by opposing counsel. It's false. My husband never did any test on Down syndrome. My husband is a neurologist, and Mr. Lund went to his practice where there are several doctors. My husband's office sent a genetic test to Massachusetts, where it was tested by, in those days, the only lab that did these tests, and it came back absolutely no Down syndrome, and everyone knows that. It was never disputed. It was buried in the record somewhere where Judge Cowan picked this up, and not only did he falsely say that this was not legitimate, but then he went to the heart of the case, Your Honor. He said, Do I want to give $200 million to somebody who may have Down syndrome? So this is an issue in the case. So it was worse than what you just said. He had a genetic test that I was trying to show him in the record. No, please retract your statement. He wouldn't, and then the ultimate issue of the case, he said, Do I want to do that with somebody that has Down syndrome? No, but wasn't that, in the context of that, wasn't that a throwaway statement? That wasn't a statement of why he was making a decision, was it? Well, but the $200 million, we're asking for that distribution, Your Honor, and we're saying that he is a competent man and he is financially mature, and Judge Cowan, throwaway statement or not, it was a judicial presumption, and by the way, it will go to the next judge. That statement is going to go to the next judge, just as Mr. Green is repeating it here, and it's going to cast a shadow over Mr. Lund as long as these proceedings last in the Los Angeles County Superior Court. Going back to the mootness of this, if this was a case that was pending right now, before Judge Wilson still, and hadn't been dismissed, I would have immediately gone in and amended my complaint with retaliation claim because now Judge Cowan is discriminating against me, against Mr. Lund, in terms of trying to get rid of his counsel, and that is just wrong. Counsel, you're beyond your time. Do you want to sum up briefly? I believe that this case is not moot. He still has a threat of harm because of all the things that are yet to face him in probate court, because of Judge Cowan's inappropriate findings, and in any event, the ADA claim is certainly not moot, and there is no judicial immunity for that. It's made against the L.A. County Superior Court. Thank you, counsel. Thank you both for appearing today and for your arguments in this interesting case, and the case is now submitted. We'll move on to our final argument of the day in Regency Heir LLC v. Dixon, case number 20-72084.
judges: Stein, Nelson, Lee